IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR ST.
JOHNS COUNTY, FLORIDA

CASE NO.: CA10-1547
DIVISION: 55

MICHAEL L. LATTUCA,

    Plaintiff,

and

GENESIS ELECTRONICS, INC.,
a Foreign Corporation, GENESIS
ELECTRONICS GROUP, INC.,
A Foreign Corporation,
and RAYMOND PURDON.

    Defendants.

_____/

## THIRD AMENDED COMPLAINT

The Plaintiff, MICHAEL L. LATTUCA, by and through the undersigned counsel, files this civil action against Defendants, GENESIS ELECTRONICS, INC., GENESIS ELECTRONICS GROUP, INC., and RAYMOND PURDON and alleges as follows:

### JURISDICTION AND VENUE

1. Plaintiff, MICHAEL L. LATTUCA (hereinafter "Lattuca") is an individual, who at the time of filing this lawsuit, resided in the county of St. Johns within the State of Florida.

2. Defendant, GENESIS ELECTRONICS, INC. is a Foreign Corporation, and on information and belief is organized under the laws of Delaware, with its principal place of business in Hollywood, Florida at the time of filing this lawsuit.

3. Defendant, GENESIS ELECTRONICS GROUP, INC. is a Foreign Corporation, and on information and belief is organized under the laws of Nevada, with its

principal place of business in Hollywood, Florida. GENESIS ELECTRONICS, INC. and GENESIS ELECTRONICS GROUP, INC. are hereinafter referred to collectively as "Genesis".

4. Defendant, RAYMOND PURDON, is believed to be an individual resident of the State of New Jersey.

5. This Court has jurisdiction over Genesis and Purdon because the action arises from Genesis' and Purdon's contacts and activities within the State of Florida.

6. Venue is proper in this Court because Genesis agreed to compensate Lattuca as an employee and such compensation was due and payable in St. Johns County, Florida and because the fraud was committed in St. Johns, County, Florida.

7. This Circuit Court has subject matter jurisdiction over this action, because substantially more than $15,000.00 is at issue, exclusive of interest and costs.

## CONSUMMATION OF THE EMPLOYMENT AGREEMENT

8. In Spring of 2008, Edward Dillon, CEO of Genesis, met Lattuca at his then residence in Ponte Vedra Beach, through the sale of a private vehicle.

9. Mr. Dillon, during the course of the sale of the vehicle, explained that Genesis had been developing a new product called the SunBlazer™.

10. Mr. Dillon explained that the SunBlazer™ was designed to convert light into electrical energy (solar technology) and that the SunBlazer™ was designed to attach to the Apple iPhone.

11. Mr. Dillon explained that the SunBlazer™ could be attached to the cell phone for a continuous charge or that it could be inserted into the cell phone for a rapid boost charge.

12. Mr. Dillon explained that the SunBlazer™ was currently being manufactured in Taiwan.

13. Mr. Dillon explained that Genesis owned a U.S. Patent and had a license to produce for Apple iPhone.

14. At the time of the filing of this lawsuit, Lattuca believed that Genesis Electronics, Inc. and/or Genesis Electronics Group, Inc., at all material times hereto, owned a U.S. Patent on the SunBlazer™ and a license to produce for Apple iPhone.

15. Mr. Dillon explained that Genesis was in the process of selecting potential candidates for the position of President.

16. Lattuca informed Mr. Dillon that he had contacts with experience with Chinese manufacturers, that he had product development experience, distribution experience, licensing agreement experience and experience as the C.E.O. of a multi-million dollar corporation.

17. Lattuca further informed Mr. Dillon that he would be excited working with a company that was bringing such cutting edge technology to the market.

18. Later, Mr. Dillon and Ray Purdon personally met with Lattuca at Lattuca's residence in Ponte Vedra Beach, Florida and further induced Mr. Lattuca to accept the position as President of Genesis.

19. Both Mr. Dillon and Mr. Purdon explained to Lattuca, at this meeting and prior to him beginning employment, that Genesis owned a U.S. Patent on the SunBlazer and a license to produce for the Apple iPhone.

20. On or about May 27, 2009, Lattuca provided Genesis with a letter of understanding (hereinafter the "Offer") offering to work as Genesis' President, pursuant to

the enclosed terms. A complete and accurate copy of the Offer is attached hereto as Exhibit "A".

21. On June 5, 2009, Genesis formally accepted Lattuca's Offer by e-mail (hereinafter the "Acceptance") and advised Lattuca that he was appointed as President of Genesis on June 6, 2009. A complete and accurate copy of the Acceptance is attached hereto and incorporated herein as Exhibit "B".

22. Consideration for the Contract was evidenced by Lattuca receiving 1,000,000,000 shares of Genesis Electronics Group, Inc. stock and by Genesis paying some wages to Michael Lattuca.

23. The terms of the Contract were as follows:

   a. Issuance of 1,000,000 shares of stock

   b. Base pay of $60,000.00 per year for five years

   c. Travel and expense budget of ½ base pay

   d. Stock Incentives

   e. $150,000.00 annual pay upon maintaining incentives

   f. Severance pay of 1.5 years plus 1 year commissions earned in previous 12 months

   g. A small office or executive suites in Jacksonville, Florida

   h. Lattuca's business to act as exclusive vendor for promotional products with Lattuca's business sharing thirty percent (30%) of the profit with Genesis

24. On July 13, 2009, Genesis issued a press release which announce that Lattuca was hired as the new President of Genesis Electronics, Inc.

## GENESIS' REFUSAL TO SIGN A FORMAL EMPLOYMENT AGREEMENT

25. Genesis and Dillon induced Lattuca to begin employment without a signed agreement by informing Lattuca that it "agree[d] to the employment agreement you outlined, [which] will be modified slightly as discussed during next week, and finalize a formal signed agreement by the parties."

26. Genesis further stated via e-mail that "[w]e have a working agreement in place, and Ed will get you something formal." Ray Purdon, Chairman of the Board, also confirmed that there was a working agreement and that a formal agreement would follow.

27. Lattuca detrimentally relied upon Genesis, Dillon's and Purdon's false inducements that a formal agreement would be signed and reported to work.

28. Despite repeatedly requesting, for approximately two months, that Genesis sign a formal agreement, Genesis failed and refused to honor their promise to execute a formal employment agreement.

## LATTUCA'S DISCOVERY THAT THE SUNBLAZER™ DIDN'T WORK AND GENESIS' SUBSEQUENT WRONGFUL TERMINATION

29. While Lattuca was performing his duties as President of Genesis he discovered that the SunBlazer™ product did not work. Although the SunBlazer™ would convert light to electrical energy the SunBlazer™ was not capable of converting enough light to electrical energy to charge the SunBlazer™.

30. Lattuca, in an attempt to rectify and correct the problem, contacted the manufacturer via e-mail to determine if and how the problem could be resolved. The manufacturer was not able to propose a cost effective to solution to fix the SunBlazer™.

31. Lattuca then contacted Ed Dillon and Ray Purdon and informed them that the SunBlazer™ did not function properly and informed Ed Dillon that finding a new manufacturer was a top priority of the SunBlazer™.

32. Instead of trying to find a manufacturer that could produce a working SunBlazer™ at a cost effective price, Genesis mandated that Lattuca work with the existing manufacturer to produce a fully functional 4 to 6 hour SunBlazer™.

33. Although Genesis knew the SunBlazer™ was not functional it continued to market its product to investors as functional and continued to demand that Lattuca bring a product to market that Genesis knew didn't work.

34. Instead of working with Lattuca to find a manufacturer that could produce a functional and cost effective SunBlazer™, Genesis breached the Contract by terminating Lattuca without cause and prior to the expiration of the five year Contract.

35. Genesis refused to compensate Lattuca for:

   a. The remaining portion of his base salary;

   b. His 1.5 years of severance pay; and

   c. Refused to issue an opinion letter to the transfer agent instructing the transfer agent to remove the restrictive legend.

## GENESIS' DEMAND FOR A RETURN OF STOCK PREVIOUSLY ISSUED

36. The 1,000,000 shares of stock issued to Lattuca were paid in consideration for his accepting employment as President of Genesis.

37. Although the 1,000,000 shares of stock issued to Lattuca were "Restricted Securities" as that term was defined by Rule 144 of the Securities Act of 1933 there was no agreement that the shares were conditional or contingent upon continued employment.

38. On or about August 23, 2009, Genesis wrongfully terminated Lattuca and wrongfully demanded return of the 1,000,000 shares of stock.

39. Additionally, Genesis and Purdon sued Lattuca in a further effort to prevent him from selling his stock.

**PURDON MISREPRESENTED GENESIS' OWNERSHIP OF THE U.S. PATENT**

40. In addition to representing Genesis' ownership of a U.S. Patent to Lattuca, Purdon has signed a 10-K, which was filed with the Securities and Exchange Commission, notifying investors and potential investors that Genesis Electronics Group, Inc. owned U.S. Patent 6,586,906.

41. Such representation to Lattuca and to the investors in general was false.

42. Pursuant to the United States Patent and Trademark Office, Genesis is not the owner of any registered U.S. Patent. Furthermore, the owner of U.S. Patent 6,586,906 is not any of the Defendants in this lawsuit.

**COUNT I: BREACH OF WRITTEN CONTRACT (Against Genesis)**

43. As his first cause of action, Lattuca incorporates paragraphs one (1) through forty-two (42) into this count.

44. This is an action for Breach of Contract which exceeds $15,000.00, exclusive of costs, interests and attorney's fees.

45. Lattuca made an Offer for employment to act as Genesis' President (Exhibit "A") which was accepted by Genesis (Exhibit "B"). Such Offer and Acceptance formed a binding and enforceable written contract.

46. Genesis' acceptance of Lattuca's Offer was supported by ample consideration. Lattuca provided services as President of Genesis and Lattuca received 1,000,000 shares of stock and Genesis paid him some of the wages due to him.

47. Genesis' acceptance of Lattuca's Offer constituted a valid and binding contract (hereinafter the "Contract").

48. Genesis breached the contract by terminating Lattuca without cause, by failing to pay him all wages due, by failing to pay him 1.5 years of severance, by failing to issue an opinion letter to the transfer agent allowing him to sell the shares of stock in his name to the transfer agent and by failing to reimburse him for travel expenses.

49. Lattuca has been damaged by the actions of Genesis because he has not received his full compensation due, has not been able to realize a gain on the stock he holds and has not been reimbursed for his travel expenses.

50. Lattuca will be further and continually damaged as he is unable to sell his securities in the marketplace and is entitled to damages for any market loss he suffers from being wrongfully prohibited from realizing any gain in his stock.

51. Lattuca has performed all conditions precedent to filing this cause of action.

WHEREFORE, Lattuca demands judgment for damages as set forth herein against Genesis, awarding to Lattuca, its consequential damages, actual damages, prejudgment and post judgment interest on all damages, costs of suit, and such other and further relief as this Court may deem just and proper.

## COUNT II: BREACH OF ORAL CONTRACT (Against Genesis)


52. As his second cause of action, Lattuca incorporates paragraphs one (1) through forty-two (42) into this count. This count is plead in the alternative to Count I.

53. This is an action for Breach of Contract which exceeds $15,000.00, exclusive of costs, interests and attorney's fees.

54. Lattuca made an Offer for employment to act as Genesis' President (Exhibit "A") which was accepted by Genesis (Exhibit "B"). Such Offer and Acceptance formed a binding and enforceable oral contract.

55. Genesis' acceptance of Lattuca's Offer was supported by ample consideration. Lattuca provided services as President of Genesis and received 1,000,000 shares of Genesis stock and Genesis paid him some of the wages due to him.

56. Genesis' acceptance of Lattuca's Offer constituted a valid and binding contract (hereinafter the "Contract").

57. Genesis breached the contract by terminating Lattuca without cause, by failing to pay him all wages due, by failing to pay him 1.5 years of severance, by failing to issue an opinion letter to the transfer agent allowing him to sell the shares of stock in his name to the transfer agent and by failing to reimburse him for travel expenses.

58. Lattuca has been damaged by the actions of Genesis because he has not received his full compensation due, has not been able to realize a gain on the stock he holds and has not been reimbursed for his travel expenses.

59. Lattuca will be further and continually damaged as he is unable to sell his securities in the marketplace and is entitled to damages for any market loss he suffers from being wrongfully prohibited from realizing any gain in his stock.

60. Lattuca has performed all conditions precedent to filing this cause of action.

WHEREFORE, Lattuca demands judgment for damages as set forth herein against Genesis, awarding to Lattuca, its consequential damages, actual damages, prejudgment and post judgment interest on all damages, costs of suit, and such other and further relief as this Court may deem just and proper.

### COUNT III: UNPAID WAGES (Against Genesis)

61. As his third cause of action, Lattuca incorporates paragraphs one (1) through forty-two (42) into this count.

62. This is an action for unpaid wages which exceeds $15,000.00, exclusive of costs, interest and attorney's fees.

63. Pursuant to the employment contract, Lattuca was to be compensated $60,000.00 per year as wages (Exhibit "A"). Lattuca is also entitled to other non-wage compensation and severance.

64. Genesis has failed to pay Lattuca severance wages accrued.

65. Despite making repeated requests, Genesis fails and/or refuses to pay Lattuca for back wages earned but unpaid.

66. Lattuca has been damaged by Genesis' failure and/or refusal to pay him for wages earned and accrued.

67. Lattuca has performed all conditions precedent to filing this cause of action.

68. Lattuca is entitled to an award of reasonable attorney's fees and costs pursuant to *Fla. Stat.* §448.08.

WHEREFORE, Lattuca respectfully requests that this Court Order Genesis to pay him all earned and unpaid wages, reasonable attorney's fees, his cost of suit; pre-judgment and

post judgment interest on all amounts awarded; and such other and further relief as this Court may deem just and proper.

### COUNT IV: FRAUD IN THE INDUCEMENT (Against Purdon)

69. As his fourth cause of action, Lattuca incorporates paragraphs one (1) through forty-two (42) into this count.

70. This is an action for fraud in the inducement which exceeds $15,000.00, exclusive of costs, interest and attorney's fees.

71. Purdon represented to Lattuca that if he worked as Genesis' President Genesis would sign an employment agreement commensurate with the terms contained in Exhibit "A".

72. Purdon represented to Lattuca, prior to his beginning employment, that Genesis owned a U.S. Patent regarding the SunBlazer.

73. Purdon represented to Lattuca, prior to his beginning employment, that the SunBlazer functioned and was able to charge a smartphone solely through solar energy.

74. Purdon represented to Lattuca, prior to his beginning employment, that he would receive 1,000,000 shares of Genesis stock.

75. All of the representations in paragraphs 71-74 were false.

76. At the time Purdon made these misrepresentations, he knew or should have known such representations were false.

77. Although Lattuca did receive 1,000,000 of Genesis stock, Purdon took action that disenfranchised Lattuca's right to convey, transfer or sell such stock.

78. Purdon made these false representations with the intent that Lattuca rely on the false representations and induce Lattuca to rely on the false representations.

79. Lattuca did rely on these false representations.

80. Lattuca was injured and damaged as a result of Defendants' false representations.

81. Lattuca demands Purdon pay punitive damages.

WHEREFORE, Lattuca demands judgment for damages as set forth herein against Purdon, awarding to Lattuca, his consequential damages, actual damages, punitive damages, prejudgment and post judgment interest on all damages, costs of suit, and such other and further relief as this Court may deem just and proper.

### COUNT V: FRAUD (Against Genesis)

82. As his fifth cause of action, Lattuca incorporates paragraphs one (1) through forty-two (42) into this count.

83. This is an action for fraud in the inducement which exceeds $15,000.00, exclusive of costs, interest and attorney's fees.

84. Genesis represented to Lattuca that if he worked as Genesis' President Genesis would sign an employment agreement commensurate with the terms contained in Exhibit "A".

85. At the time Genesis made this representation, Genesis knew or should have known such representation was false.

86. Genesis made this false representation with the intent that Lattuca rely on the false representation and induce Lattuca to rely on the false representation.

87. Lattuca did rely on this false representation.

88. Lattuca was injured and damaged as a result of Defendants' false representation.

WHEREFORE, Lattuca demands judgment for damages as set forth herein against Genesis, awarding to Lattuca, its consequential damages, actual damages, prejudgment and post judgment interest on all damages, costs of suit, and such other and further relief as this Court may deem just and proper.

### REQUEST FOR JURY TRIAL

The Plaintiff demands trial by Jury on all issues so triable as a matter of right.

Submitted this 19 day of November 2014.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by electronic service to **Paras Desai, Esq.**, Desai Law Group PL., 11481 Old Saint Augustine Road, Suite 104, Jacksonville, Florida 32258 at pd@desailawgroup.com on this 19 day of November 2014.

LINDELL & FARSON, P.A.

By: _____
D. Brad Hughes, Esq.
Florida Bar Number 0015367
12276 San Jose Blvd., Suite 126
Jacksonville, Florida 32223-8630
Telephone (904) 880-4000
Facsimile (904) 880-4013
e-service: pleadings@lindellfarson.com
Attorneys for Plaintiff